UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHONTENIESHA R. WORD,               )
                                    )
        *Plaintiff*,                )
                                    )
v.                                  )        No. 1:18-CV-00187-SKL
                                    )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
        *Defendant*.                )

## MEMORANDUM AND ORDER

Plaintiff Shonteniesha R. Word ("Plaintiff"), acting *pro se*, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment [Docs. 21[1] & 23], and this matter is now ripe.[2] For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 21] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 23] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

## I.      ADMINISTRATIVE PROCEEDINGS

---

[1] The Court construes Plaintiff's *pro se* filing as a motion for summary judgment [Doc. 21].

[2] Plaintiff filed a second motion on May 9, 2019 [Doc. 25], asking the Court to enter judgment in her favor on the grounds that she did not "receive a notice or response of any type" to her motion for summary judgment. The Commissioner filed a response to Plaintiff's second motion the next day [Doc. 27], explaining that the Commissioner's motion and supporting memorandum [Docs. 23 & 24] were sent to Plaintiff by first class mail the day they were filed, which is confirmed by the certificates of service on the two documents. Plaintiff did not reply to the Commissioner's response concerning services, and she has not disputed that she did receive the motion and memorandum; she only claimed she never received a "notice or response." The address the Commissioner used to mail her motion and memorandum to Plaintiff is the same address used by Plaintiff in her most recent filing [Doc. 25]. Accordingly, Plaintiff's second motion [Doc. 25] will be **DENIED** as moot.

According to the administrative record [Doc. 11 ("Tr.")], Plaintiff filed her application for DIB on March 22, 2016, alleging disability beginning July 21, 2015.  Plaintiff's claims were denied initially and on reconsideration at the agency level.  Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on December 5, 2017.  On March 20, 2018, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time from the alleged onset date through the date of the decision.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed the instant action.

## II.  FACTUAL BACKGROUND

### A.  Education and Employment Background

Plaintiff was born June 28, 1980, making her a "younger individual age 18-49," at all relevant times.  20 C.F.R. § 404.1563(c).  She graduated high school and completed one year of college, and she is able to communicate in English.  She has past relevant work as a welder and a hand packager, both of which are classified in the Dictionary of Occupational Titles[3] ("DOT") as unskilled, medium exertional level jobs.

### B.  Medical Records

In her Disability Report, Plaintiff alleged disability due to hydronephrosis, urethral stricture, feelings of worthlessness and guilt, self-esteem problems, severe pain, paranoia, "appetite problems," "sleep problems," and restricted daily activities (Tr. 225).  While there is no need to summarize the medical records herein, the relevant records have been reviewed and will be discussed below if necessary.

---

[3] *available at*: https://www.oalj.dol.gov/LIBDOT.HTM

**C.** **Hearing Testimony**

At the hearing before the ALJ on December 5, 2017, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by an attorney at the hearing, although she is not represented in the instant lawsuit. The Court has carefully reviewed the transcript of the hearing (Tr. 28-72).

**III.** **ELIGIBILITY AND THE ALJ'S FINDINGS**

**A.** **Eligibility**

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that

significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.  The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through September 30, 2019. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found Plaintiff had the following severe impairments: (1) urinary tract disorder with chronic traumatic deformity, (2) hydronephrosis, and (3) major depressive disorder with psychosis. The ALJ also found Plaintiff was obese, but that this condition caused no more than minimal limitations to Plaintiff's ability to perform basic work activities and was therefore a non-severe impairment. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following clarifications/additional restrictions:

- She can lift and carry a maximum of 15 pounds occasionally and up to 10 pounds frequently.

- She can sit, with normal breaks, for about 6 hours out of an 8-hour workday; and stand or walk for about 4 hours out of an 8-hour workday.

- Pushing or pulling with the bilateral upper extremities is limited to frequent, and no operation of foot controls with the bilateral lower extremities.

- She can balance frequently; stoop, kneel, and crawl occasionally; but she can never crouch.

- She can climb ramps, ladders, and stairs occasionally; but she can never climb ropes or scaffolds.

- She should avoid all exposure to excess vibration (jackhammer), moving machinery and unprotected heights.

- She is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements; involving only simple work-related decisions, and few, if any, work place changes introduced gradually.

- She is limited to minimal (0-6%) interaction with the public, and no more than occasional interaction with coworkers.

(Tr. 16).

At step four, the ALJ found Plaintiff was not capable of performing her past relevant work. At step five, however, the ALJ found Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, including routing clerk, sorter, and inspector. These

findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date and the date of the ALJ's decision.

## IV.  ANALYSIS

In her brief, Plaintiff explains her current problems date back to a car accident she was involved in in 1998.  Without emphasizing any specific errors with the ALJ's decision, she claims the SSA made a "really big mistake" in denying her benefits [Doc. 21 at Page ID # 486].  She explains that in spite of a number of "surgeries and procedures" for her conditions, she still experiences problems that prevent her from being able to work.  She writes, "I can only express how badly I hurt and vomit, urinate with blood, get constipated, have rolling back pains daily and cry all too often." [*id.* at Page ID # 487].  She cites to "Explanation of Determination letters dated 6-19-15 and 12-22-2016,"[4] and argues, "[a]ccording to the rules my problems are disabling under the guidelines." [Doc. 21 at Page ID # 489].  She also cites sixteen pages from the administrative record [*id.* at Page ID # 485].  Finally, she attaches treatment records from 2011, which pre-date her alleged onset date by four years and do not appear to be in the administrative record [*id.* at Page ID # 491-93], and treatment records from 2018 and 2019, which post-date the ALJ's decision by about four to ten months [*id.* at Page ID # 496-99].

The Commissioner contends the ALJ "properly based his RFC determination on his consideration of the entire record including medical evidence, medical opinion evidence, and Plaintiff's subjective statements, and adequately accounted for the supported level of limitation

---

[4] Two Disability Determination Services ("DDS") "Explanation of Determination" letters are attached to Plaintiff's motion [Doc. 21 at Page ID # 494-95].  Although the attached documents are undated, the Court presumes these are the letters Plaintiff refers to in her motion.  These same letters are also in the administrative record (Tr. 119, 122).

that was consistent with the evidence." [Doc. 24 at Page ID # 513]. The Commissioner further contends the ALJ's step five determination is supported by substantial evidence in the form of the VE's testimony.

The Court reiterates Plaintiff is now proceeding *pro se*. The pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, *pro se* plaintiffs must abide by "basic pleading standards," and the role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (internal quotation marks and citations omitted).

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.      Plaintiff's Recent Treatment Records Do Not Justify Remand**

Plaintiff submits treatment records dated July 5, 2018, August 2, 2018, and January 10, 2019, completed by various doctors from the LCMC Health urology department [Doc. 21 at Page ID # 496-99].   These records post-date the ALJ's decision as well as the Appeals Council's decision.

The Court cannot reverse the ALJ's decision based on evidence not presented to the ALJ.[5] *Sutton v. Soc. Sec. Admin.*, No. 09-2288, 2011 WL 9482974, at *3 (6th Cir. Apr. 5, 2011) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)); *see also Curler v. Comm'r of Soc. Sec.*, 561 F.App'x 464, 472-73 (6th Cir. 2014) ("We have repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g).") (citing *Foster*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)).   The Court can, however, remand a case for further consideration of a claim in light of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). Such remand "is appropriate 'only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ.'"  *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see also* 42 U.S.C. § 405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that

---

[5] As mentioned, Plaintiff also submitted evidence of treatment she received in 2011 [Doc. 21 at Page ID # 491-493].  The Court was unable to find these documents in the record; accordingly, the Court has not considered them for purposes of reviewing the ALJ's decision.

there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

"'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding . . . .'" *Schmiedebusch*, 536 F. App'x at 647 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material if it creates "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). "'Good cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster*, 279 F.3d at 357). "The claimant bears the burden of showing that all three requirements have been met in order to obtain a remand." *Sutton*, 2011 WL 9482974, at *3 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)).

Neither party addresses these standards with regard to Plaintiff's 2018-19 LCMC urology treatment records. These records provide the following: On July 5, 2018, Dr. Hoang Minh Tue Nguyen diagnosed Plaintiff with a "ureteral stricture, right." The "Patient Education" section explains Plaintiff's problem is with "urinary retention," i.e., "not being able to empty your bladder all the way." Plaintiff was informed: "You have a problem in your urinary tract or in the nerves that control it." Plaintiff was instructed to submit to a urine culture and a renal imaging study, and to return in four weeks [Doc. 21 at Page ID # 497]. On August 2, 2018, Dr. Stephen Proctor diagnosed Plaintiff as having "hydronephrosis with ureteral stricture, not elsewhere classified." He prescribed Tramadol for pain and ordered further labs/studies [*id.* at Page ID # 499]. On January 10, 2019, Dr. Jason Chiang noted the right ureteral stricture and right flank pain. He referred

Plaintiff to neurosurgery and physiatry departments, and instructed Plaintiff to return in three months. He did not make any changes to Plaintiff's medication [*see id.* at Page ID # 496].

Technically, the records are "new" in the sense that they did not exist when the ALJ rendered his decision on March 20, 2018. The Court concludes, however, that they are not material. The ALJ discussed Plaintiff's "history of severe urinary/kidney problems" in detail (Tr. 20). The ALJ noted that an October 2017 CT scan revealed no hydronephrosis, but it did show "multiple calcifications in the pelvis bilaterally." The CT report cited by the ALJ further provides "[i]t is difficult to follow the ureters throughout their course . . . . If the patient's symptoms persist further evaluation with IV pyelography may be of benefit." (Tr. 406). The ALJ also noted Plaintiff underwent a balloon dilation of her ureteral stricture and a stent placement for hydronephrosis in March 2015, but a November 2015 IVP study showed that mild hydronephrosis remained, and a July 2016 cystogram showed "right reflux into the right ureter and renal collecting system." (Tr. 20).

In weighing all of the medical evidence, the ALJ determined Plaintiff had a urinary tract disorder with chronic traumatic deformity, and hydronephrosis, and that both of these were severe impairments (Tr. 13). The 2018-19 LCMC urology records do not describe any new diagnoses that the ALJ did not already have, nor do they describe any further limitations into Plaintiff's already restrictive light work RFC. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." (citation omitted)); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (A "mere diagnosis . . . says nothing about the severity of the condition."); *Reynolds v. Berryhill*, No. 3:16-CV-458-JRG-CCS, 2017 WL 4172625, at *8 (E.D. Tenn. Aug. 31, 2017)

(holding imaging studies dated three to six months after ALJ's decision were not material where claimant "has not cited to any treatment records, medical opinions, or other evidence that demonstrate the functional effects, if any, upon his right shoulder given these latter imaging studies"), report and recommendation adopted, 2017 WL 4172144 (E.D. Tenn. Sept. 20, 2017); *Pipho v. Comm'r of Soc. Sec.*, No. 14-cv-11273, 2015 WL 4527986, at *5 (E.D. Mich. July 27, 2015) (finding that new evidence "relating to [claimant's] sciatica" was not material, where ALJ "recognized sciatica as one of [claimant's] impairments").

Plaintiff writes that her new doctors at LCMC believe Plaintiff is experiencing "the very problems [she] already underwent so many procedures to correct." [Doc. 21 at Page ID # 488]. Even if the 2018-19 records show a recent worsening of Plaintiff's condition, the Sixth Circuit has held that "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)); *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) ("Evidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." (citations omitted)). The proper remedy under those circumstances "would be for the Plaintiff to file a new claim for benefits addressing this later time period." *Reynolds*, 2017 WL 4172625, at *8 (citing *Wyatt*, 974 F.2d at 685).

Even assuming for the sake of argument that the records were shown to be material, Plaintiff has not shown good cause for her failure to acquire them prior to the administrative hearing on December 5, 2017. She offers no explanation for not seeking treatment from these doctors before the ALJ issued his decision on March 20, 2018, or even before the Appeals Council

declined to review her case on June 21, 2018. The Court could not discern any reason, from the medical record or the transcript of the administrative hearing, for Plaintiff's decision to wait until after the administrative process was complete to seek treatment at LCMC (unless perhaps she sought the additional treatment due to a post-decision worsening in her condition). The Court is sympathetic to the fact that Plaintiff is not currently represented by an attorney, but she was during the administrative process, at least through the hearing before the ALJ. At no point during the hearing or thereafter did she or her counsel explain that she had upcoming medical appointments that could be important to her claim. Accordingly, after careful consideration, the Court concludes Plaintiff has failed to meet her burden to justify a remand under sentence six of 42 U.S.C. § 405(g). Accordingly, Plaintiff's motion will be denied in this regard.

### C.    The ALJ's Decision is Supported by Substantial Evidence

Plaintiff does not challenge any specific aspect of the ALJ's decision, although she does focus her brief much more on her physical issues than on her mental issues. As mentioned, she cites a number of pages from the transcript of the administrative hearing, all of which pertain to her urinary tract/kidney issues. The Commissioner does not directly address these specific pages. Nevertheless, the Court has reviewed them, as well as other evidence in the record, and determined none of the pages Plaintiff cites reveal any harmful error in the ALJ's decision. Rather, as the Commissioner argues, the ALJ's decision reflects he applied the proper legal standards, and the Court finds the decision is supported by substantial evidence in the record.

### 1.    Records Cited by Plaintiff

First, Plaintiff cites a number of pages related to the development of her disability claim, including one of the DDS Explanation of Determination letters (Tr. 122); an excerpt from a

Disability Report which indicates Plaintiff was being treated by Dr. Stanley Herrell, III, a urologist at Vanderbilt University Medical Center, in 2016 (Tr. 237-39); and an excerpt from the brief she submitted (with counsel) prior to the administrative hearing which provides a timeline of Plaintiff's treatment for her physical issues (Tr. 267-69). The remaining pages Plaintiff cites are the actual medical records chronicled in the brief (Tr. 291, 295, 298, 304, 353-56).

The Court's role is to review the ALJ's decision, not any explanation given by the state DDS, which does not represent the final decision of the SSA. As for the remaining pages, the excerpt from Plaintiff's brief provides a fairly detailed history of the procedures Plaintiff has had related to her kidney/bladder issues, which can be verified by reference to Plaintiff's medical records. While the ALJ did not specifically discuss each of Plaintiff's procedures, he refers to a note documenting Plaintiff's care under Dr. Ed McIntire through 2015, at which time Plaintiff came under the care of Dr. Herrell (Tr. 20, 401). The record reflects the following progression under Dr. Herrell: Plaintiff had a stent implanted in April 2016. Treatment notes indicate Plaintiff requested Dr. Herrell use a temporary stent until after Plaintiff's daughter's graduation, at which point Plaintiff "can have a reconstructive procedure." (Tr. 341). On May 16, 2016, Dr. Herrell noted Plaintiff was tolerating the temporary stent "poorly," and that his plan was to "set her up for later in June." (Tr. 354). Plaintiff had the second procedure on June 30, 2016, and was instructed to return in two weeks (Tr. 386-87). The ALJ addressed the results of the June 30 surgery in the context of a discussion of the July 14 follow-up visit, noting a cystogram revealed "no evidence of hydronephrosis," and "showed a post-surgical, mild contour deformity of the urinary bladder with no evidence of leakage, but right reflux into the right ureter and rental collecting system." (Tr. 20, 385). The ALJ then discussed the final procedure Dr. Herrell performed on Plaintiff, a

flexible cystoscopy stent removal on August 22, 2016 (Tr. 20). Plaintiff tolerated the procedure well, and the stent and scope were removed without difficulty (Tr. 384).

As the ALJ notes, the next major event was in October 2017, when Plaintiff presented at the Memorial Hospital Emergency Room. A CT scan of the abdomen at that time revealed "no definite urinary calculi," and that Plaintiff's kidneys were "normal size and shape with no hydronephrosis," which the ALJ specifically noted (Tr. 20, 406-07). The ALJ also noted Plaintiff's doctor observed calcifications in the pelvis, "most of which represented phleboliths" (Tr. 20, 406). Plaintiff's "condition upon dismissal" was described as "good" (Tr. 411). The ER records state that "[i]f the patient's symptoms persist further evaluation with IV pyelogram may be of benefit." (Tr. 407). The record does not contain any follow-up with Dr. Herrell or Dr. McIntire, or an IV pyelogram from any other doctor. Rather, Plaintiff was seen by a nurse practitioner on October 23, 2017, who noted Plaintiff's chronic issues with bladder control, but who also recorded Plaintiff had "no urinary urgency," and that Plaintiff's "main problems are with taking deep breaths and with periods more than previous." (Tr. 418, 421).

The Court closely reviewed the records cited by Plaintiff, and other relevant medical records, and compared them to the ALJ's decision. Plaintiff's treatment history indicates she has a chronic condition in her urinary tract for which she has undergone a number of procedures by more than one doctor. The ALJ's decision makes clear that he appreciated the nature and severity of Plaintiff's condition as it was reflected in the treatment records. The only procedure the ALJ did not specifically address was Dr. Herrell's April 2016 temporary stent implantation. Nevertheless, the record reflects the temporary stent was removed/replaced in procedures the ALJ did clearly consider and discuss. The most recent records before the ALJ indicated the last

procedure by Dr. Herrell was successful, even if it did not completely resolve all of Plaintiff's pain.

It is well-established that the ALJ is not required to discuss each piece of data in his decision, "so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)). In this case, it is clear the ALJ reviewed all of Plaintiff's treatment records with Dr. Herrell and Dr. McIntire and considered Plaintiff's treatment to that point as a whole.

Accordingly, after very careful review of the administrative record and consideration of the discretion to be afforded the ALJ's findings, the Court finds Plaintiff has failed to show any harmful error in the ALJ's consideration of her DIB claim. Rather, as argued by the Commissioner and discussed below, the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all of the evidence in the record to arrive at a well-reasoned RFC.

### 2. Plaintiff's Alleged Symptoms

A claimant's RFC is the most they can do despite their impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). This includes a claimant's own description of their symptoms and the limiting effects of their impairments. Social Security Ruling ("SSR") 16-3p provides guidance as

to how the SSA evaluates a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. In this case, the ALJ found the evidence as a whole did not support of a finding of any limitations beyond a reduced range of light work light work (Tr. 16). An examination of the ALJ's decision shows that he set forth and discussed the relevant evidence in a sufficiently thorough manner.

The ALJ acknowledged that Plaintiff alleged debilitating symptoms that would render her unable to work resulting from her urinary tract disease, chronic kidney disease, and depression, but found there was "insufficient evidence to support the severity of [Plaintiff's] symptoms to the extent alleged." (Tr. 20). First, the ALJ contrasted Plaintiff's allegations with her fairly extensive activities of daily living, which included reading, watching the news, going out every day (sometimes alone), driving, taking walks with a friend, and shopping "in stores and by computer for groceries, household and personal items, gasoline, and bill payments." (Tr. 21). The ALJ noted that in her September 2016 Function Report, Plaintiff indicated she could "prepare simple meals such as microwave meals, salads, canned beans and tuna. House and yard work now included mowing, planting flowers, washing dishes, vacuuming and sweeping with help from her husband and son. Additional hobbies included planting flowers and grass cutting, and additional social activity included using the internet to communicate with family every day." (Tr. 21).

Elsewhere in the decision, the ALJ described other evidence which did not support Plaintiff's disabling allegations, including the elimination of Plaintiff's hydronephrosis after her August 2016 procedure with Dr. Herrell, and the other normal findings from the October 2017 CT scan, as discussed in detail above (Tr. 20). The ALJ also described Plaintiff's "very sparse" history of mental health treatment "consisting of only two visits" with a psychiatrist in 2015 (Tr. 19),

despite having health insurance (Tr. 17); as well as the state agency non-examining psychological consultant's opinion that Plaintiff had at most minimal limitations in her ability to understand, remember, and apply information; and moderate limitations in her ability to socially interact, and to maintain concentration, persistence, or pace (Tr. 18). The ALJ noted a moderate limitation in social interaction was consistent with Plaintiff's past anger issues, which included being arrested for "fighting and violence" (Tr. 17). The ALJ also described the psychological consultative examiner's conclusion that Plaintiff was capable of managing her own funds, and his suspicion that during the exam, Plaintiff exaggerated her symptoms "for the purpose of presenting herself in a negative manner" (Tr. 18). Finally, the ALJ emphasized Plaintiff "has provided no statements from any treating psychiatrists, psychologists or other mental health professionals to the effect that she is unable to work based on objective evidence from physical exams, imaging and testing reports, clinical observations or mental status examination." (Tr. 20).

Accordingly, the Court finds the ALJ properly evaluated Plaintiff's subjective complaints and alleged symptoms in a manner consisted with relevant SSA policies and regulations, including SSR 16-3p and 20 C.F.R. § 404.1529. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), and the Court finds no error in the ALJ's decision in this regard.

### 3.     Opinion Evidence and other Medical Evidence

In considering a claim of disability and assessing RFC, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). A medical opinion from a treating source must be

given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[6] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 404.1527.

When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citation omitted). If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature and length of the treatment relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ is not, however, required to engage in a protracted discussion of the reasons. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement. (citations omitted)).

---

[6] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See* 20 C.F.R. § 404.1527.

Neither party directly addresses whether the record contains any opinions from treating physicians that would require analysis under the treating physician rule. Nevertheless, the Commissioner does assert the ALJ based his RFC determination in part on the medical opinion evidence, and the Court notes medical opinion evidence is often crucial in an ALJ's consideration of a DIB claim. As such, the Court will address the ALJ's treatment of two pieces of evidence in the record which arguably constitute opinions from treating sources, as well as the ALJ's consideration of the opinions of the non-treating sources.

As discussed, Dr. McIntire is one of Plaintiff's treating urologists, and the record contains a note he wrote to Dr. Herrell summarizing Plaintiff's treatment history, but not addressing any functional limitations. Technically, this qualifies as a medical opinion; and while the ALJ discussed it, he did not assign it any particular weight. The Court finds this is harmless error, however, because the ALJ made findings consistent with it, noting Plaintiff's medical record "documents a history of severe urinary/kidney problems including hydroureteronephrosis of the right kidney and recurrent urinary tract infections as summarized by Dr. McIntire in his correspondence with [Dr. Herrell]." (Tr. 20). *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (failure to address treating physician's opinion is harmless error "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," if the ALJ otherwise meets the goal of the treating physician rule, or if the opinion is "so patently deficient that the Commissioner could not possibly credit it").

The record also contains a Global Assessment of Functioning ("GAF") score of 45 from Dr. J. Glynn Newman, Jr., a psychiatrist who saw Plaintiff as a patient twice, on May 28 and July 2, 2015. A GAF of 45 indicates "serious symptoms and/or impairment in occupational

functioning." (Tr. 19). The ALJ noted that because GAF scores are not based on standardized norms, "they are neither inherently reliable evaluations, nor are they intended to be used as controlling evidence in a disability determination." (Tr. 19). He assigned the GAF score little weight, finding it was inconsistent with Dr. Newman's clinical observations and findings on mental status examination, and because "the detailed observations and descriptions in a provider's notes provide a vastly superior reflection of an individual's true functional abilities" (Tr. 19). Without addressing whether Dr. Newman should even be considered a treating source after only seeing Plaintiff as a patient twice, the Court finds the ALJ's consideration of the GAF score sufficient to comply with the applicable SSA rules and regulations and, furthermore, that it is supported by substantial evidence.

The record also contains medical opinions provided by the psychological consultative examiner, Benjamin Biller, M.S.; and from the state agency non-examining consultants, Renee McPherson-Salandy, Ph.D., Carolyn Parrish, M.D., and H. Moghbeli, M.D. The opinions of consulting and non-examining doctors are not subject to the same requirements of the treating physician rule. *See e.g., Brown v. Comm'r of Soc. Sec.*, 591 F. App'x 449, 451 (6th Cir. 2015) (citation omitted); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274-75 (6th Cir. 2015). Although an ALJ is "not bound by any findings" made by non-treating physicians, the ALJ must evaluate their opinions using the relevant factors in 20 C.F.R. § 404.1527(c), the same factors used to analyze the opinion of a treating physician. Unless the ALJ assigns controlling weight to a treating physician's opinion, the ALJ is required to explain in the decision the weight given to non-treating sources. *See id.* § 404.1527(e); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 837 n.8 (6th Cir. 2016) (citing 20 C.F.R. § 404.1527(c)); *Sommer v. Astrue*, No. 3:10-CV-99, 2010

WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency." (citation omitted)).

The ALJ explained the weight he assigned to almost all of these opinions from non-treating sources, which is all he was required to do. In fact, he discussed the opinions in a fair amount of detail, giving reasoned and well-supported reasons for the weight he assigned to each. The only opinion the ALJ did not discuss comes from Dr. Moghbeli, one of the state agency non-examining physicians who reviewed Plaintiff's medical record concerning her physical issues (Tr. 81-82). Nevertheless, the ALJ's RFC assessment is nearly identical to Dr. Moghbeli's. The only difference is Dr. Moghbeli found Plaintiff could never climb ladders, ropes, or scaffolds (Tr. 82); while the ALJ found Plaintiff could never climb ropes or scaffolds, but could *occasionally* climb ladders (Tr. 16). This is a very minor difference. It is clear the ALJ heavily relied on Dr. Moghbeli's opinion to arrive at Plaintiff's RFC. The ALJ's failure to refer to this opinion explicitly simply does not warrant remand.

In sum, after reviewing the record, the Court finds no harmful error in the ALJ's consideration of Plaintiff's alleged symptoms or in his evaluation of the medical opinion evidence in arriving at Plaintiff's RFC. The Court finds the RFC is supported by substantial evidence in the record, and the decision reflects the ALJ followed the applicable rules and regulations.

### 4. Step Five Determination – Other Work in the National Economy

At step four, the ALJ found Plaintiff could not perform her past work based on her RFC. To determine whether Plaintiff could perform other work, the ALJ posed a hypothetical question

to the VE during the hearing. The hypothetical matches the RFC the ALJ adopted (Tr. 16, 51-54). The VE testified there were jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC (and age, education, and past work experience) including routing clerk, sorter, and inspector (Tr. 55-56). As the Commissioner argues, because the RFC is supported by substantial evidence, the VE's testimony constitutes substantial evidence to meet the Commissioner's burden at step five, and to support the ALJ's decision that Plaintiff does not qualify as disabled. *See Ealy*, 594 F.3d at 512-13 (substantial evidence at step five "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question," if the question "accurately portrays" the claimant's limitations) (citation omitted)).

## V.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's motions for summary judgment [Docs. 21 & 25] are **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 23] is **GRANTED**; and

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

**SO ORDERED.**

**ENTER**:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE